UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
BIENVENIDO POLANCO,

       Plaintiff,

10 CV 1705 (SJ) (RLM)

MEMORANDUM
AND ORDER

-against-

UNITED STATES OF AMERICA, and
RYAN HOWE, MICHAEL VAN
EDWARDS, DANIEL MOERSCHIEL,
ADRIAN COTSWORTH and the
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

       Defendants.
-------------------------------------------------X

A P P E A R A N C E S
THE COCHRAN FIRM
233 Broadway, 5th Floor
New York, NY 10279
By:   Rudyard F. White
*Attorney for Plaintiff*

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
By:   Margaret M. Kolbe
*Attorneys for Defendants*

JOHNSON, Senior District Judge:

Bienvenido Polanco ("Plaintiff" or "Polanco") is a lawful permanent resident of the United States, originally from the Dominican Republic, who brings this action alleging false arrest, false imprisonment, and intentional infliction of emotional distress against the United States of America and the United States Department of Homeland Security and its employees (collectively, the "Defendants"). Plaintiff asserts a <u>Bivens</u>[1] claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 <u>et seq</u>.

Presently before this Court is Defendants' motion to dismiss all claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, or, in the alternative, summary judgment. For the reasons stated herein, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is DENIED, and Defendants' Motion for Summary Judgment pursuant to Rule 56 is GRANTED.

### I.     BACKGROUND

Plaintiff, a lawful permanent resident of the United States who is originally from the Dominican Republic, boarded an Amtrak train en route from New York to California. Agents from the Department of Homeland Security ("DHS" or "DHS

---

[1] <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).

agents") conducted a transportation check at a Rochester, New York train station.[2] The DHS agents approached Polanco and requested his identification. (Def. 56.1 ¶ 23). It is undisputed that Polanco provided the agents with his passport from the Dominican Republic, but not his green card. (Def. 56.1 ¶¶ 24, 26). The passport contained no stamps of entry into or exit from the United States. (Def. 56.1 ¶ 25). A copy of the green card was located in Polanco's luggage at the rear of the train car, away from the vicinity of his seat. (Def. 56.1 ¶¶ 16, 52). After initiating a records check using the name and date of birth from Polanco's Dominican passport, DHS agents were unable to locate Polanco's immigration record. Plaintiff argues that he was not given the opportunity to retrieve his green card from his luggage before he was arrested by DHS agents.[3] After nine days of detention, on December 5, 2007, Plaintiff was brought his luggage for unrelated purposes. At that time, Plaintiff produced a copy of his green card. (Def. 56.1 ¶ 52). DHS agents were then able to verify his valid immigration status, and he was immediately released. (Def. 56.1 ¶¶ 54, 56).

---

[2] The record indicates that Plaintiff boarded the train at Penn Station in New York City and was bound for an unspecified city in California. As far as the Court is aware, there are no Amtrak routes connecting New York City with California via Rochester. However, this confusion is of no consequence to the instant motion.

[3] Though Plaintiff makes this claim, his argument cites to his own deposition testimony in which he admits he presented his Dominican passport to the DHS agents and made no mention of his green card. (Pl. 56.1 ¶ 26).

3

## II.     DISCUSSION

A.  FTCA and Bivens Claims

"[W]here an individual has been deprived of a constitutional right by a federal agent acting under color of federal authority, the individual may bring a so-called Bivens action for damages against that federal agent in an individual capacity."  Lombardi v. Whitman, 485 F.3d 73, 78 (2d Cir. 2007) (internal quotation marks and citation omitted).  "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."  Bivens, 403 U.S. at 392 (quoting Bell v. Hood, 327 U.S. 678, 684 (1946)).  Plaintiff seeks damages under Bivens for what he claims was a warrantless arrest without probable cause in violation of the Fourth Amendment.

Under the Federal Tort Claims Act ("FTCA"), the United States is liable in money damages for a federal employee's common-law torts "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  The FTCA "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances."  Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007).

Plaintiff's FTCA claims are based upon the contention that DHS agents committed the common-law torts of false arrest and false imprisonment. In suits under the FTCA, the government's waiver of immunity under the FTCA must be "strictly construed in favor of the government." Long Island Radio Co. v. NLRB, 841 F.2d 474, 477 (2d Cir. 1988).

B. The Court Has Subject Matter Jurisdiction Over Plaintiff's Claims

"When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." Shipping Fin. Servs. Corp., 140 F.3d at 131. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. Aurecchione v. Schoolman Transp. System, Inc., 426 F.3d 635, 638 (2d Cir. 2005).

Defendants claim that the Immigration and Nationality Act, 8 U.S.C. § 1252(g) ("INA" or the "Act") precludes Plaintiff's false arrest/ false imprisonment claim.[4] The Act states: "no court shall have jurisdiction to hear any cause or claim

---

[4] Defendants also allege that Plaintiff's claims are barred pursuant to 8 U.S.C. § 1226(e) (which is "applicable to certain detention-related decisions in [the] period preceding entry of [a] final removal

5

by or on behalf of an alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) ("Section 1252(g)"); see Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) ("AADC").

In AADC, the Supreme Court noted that Section 1252(g)'s language about decisions to "commence removal proceedings, adjudicate cases, or execute removal orders" refers to challenges to the Attorney General's exercise of "prosecutorial discretion." 525 U.S. at 485 n. 9. In other words, the Attorney General's powers to commence proceedings, adjudicate cases, and execute removal orders are within its prosecutorial discretion and are outside of this Court's jurisdiction. However, as the Supreme Court noted, "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." AADC, 525 U.S. at 482. As the Second Circuit has clarified, "[§ 1252(g)] applies in a very narrow class of cases." Calcano-Martinez v. I.N.S., 232 F.3d 328, 339, n. 5 (2d Cir. 2000).

Therefore, DHS's decision to arrest Polanco was a decision that was separate and discrete from the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders. AADC, 525 U.S. at 482.

---

order." Zadvydas v. Davis, 533 U.S. 678, 688 (2001)), and 8 U.S.C. § 1252(a)(2)(B)(ii) (relating to judicial review of orders of removal). The issue at hand relates to the initial arrest of Plaintiff. Furthermore, though Plaintiff was processed for removal proceedings, an order of removal was not issued in the instant case. As such, the Court declines to review such claims.

Because Polanco's initial arrest was outside of the Attorney General's prosecutorial discretion, it is reviewable by the Court.

As a result, Polanco's claims arising from his arrest are not barred.

C. Summary Judgment Standard

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. Id. In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine

7

issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247–48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

D. The Defendants Had Probable Cause to Arrest Plaintiff

Plaintiff concedes that DHS agents were entitled to stop him and question him regarding his citizenship. Plaintiff's remaining claims rest on whether DHS agents had probable cause to arrest him.

Pursuant to the Federal Torts Claims Act, New York Law governs with respect to the claims of false arrest and false imprisonment. See 28 U.S.C. § 1346(b); Caban v. United States, 728 F.2d 68, 72 (2d Cir. 1984). "Under New York law, 'the tort of false arrest is synonymous with that of false imprisonment.'" Liranzo v. United States, 690 F.3d 78, 91 n. 13 (2d Cir. 2012) (citing Posr v.

8

Doherty, 944 F.2d 91, 96 (2d Cir. 1991)). To prevail on a claim for false arrest and imprisonment, a plaintiff must allege that: "(1) the defendant intended to confine [the plaintiff]; (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" Id. at 95.

Claims of false imprisonment and false arrest turn on whether the arresting officers had the requisite legal justification for making the arrest. Benjamin v. United States, 554 F. Supp. 82, 85 (E.D.N.Y. 1982). Therefore, the presence of probable cause to arrest serves as "a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). Probable cause requires an arresting officer to possess "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citing Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)). In determining whether an officer had probable cause, "courts must consider those facts available to the officer at the time of the arrest and immediately before it." Id. at 395 (citing Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002)). This requires a court to "look to the 'totality of the circumstances' and . . . [realize] that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Id. (citing Caldarola, 298 F.3d at 162). The probable

9

cause standard "is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." United States v. Steppello, 664 F.3d 359, 364 (2d Cir. 2011). While probable cause "does not require absolute certainty," Panetta, 460 F.3d at 395, officers "may not disregard plainly exculpatory evidence." Id. (citing Kerman v. City of New York, 261 F.3d 229, 241 (2d Cir. 2001)).

The Second Circuit has noted, "Congress has exercised the United States' right to protect its borders against unlawful entry by enacting, inter alia, 8 U.S.C. § 1225(b), which provides that an alien 'shall be detained' unless he appears to the examining immigration officer to be 'beyond a doubt entitled' to enter." Caban, 728 F.2d at 74 (citing 8 U.S.C. § 1225(b)). The panel added, "[i]mplementing this section, an INS regulation provides that a person claiming to be a United States citizen must establish the fact of his citizenship to the examining officer's satisfaction, or he will be dealt with as an alien." Id.

In the immigration context, in order to arrest a suspect, an officer is required to have "reason to believe" that the suspect is an alien unlawfully in the United States. 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(i). Reason to believe has been defined as requiring probable cause. Avila-Gallegos v. INS, 525 F.2d 666, 667 (2d Cir. 1975); Ojeda-Vinales v. INS, 523 F.2d 286, 288 (2d Cir. 1975).

Here, the government concedes that Polanco was confined, conscious of the confinement, and did not consent. Accordingly, the Court's only determination is

whether Polanco's detention was "otherwise privileged." The determination of whether the DHS agents' actions were otherwise privileged "is determined by consulting federal privileges applicable to federal immigration officers." Id. To be privileged, the actions of the immigration officer must be reasonable and the detention must be conducted in accordance with federal standards. See Hyatt v. United States, 968 F. Supp. 96, 108 (E.D.N.Y. 1997); see also Caban, 728 F.2d at 72–73.

The Court agrees with the Government and concludes that the DHS agents were rational in determining, based on their initial encounter with Polanco, that he was deportable as a non-citizen. When asked for his citizenship documents, Polanco provided DHS agents with a passport issued by the Dominican Republic, which contained no stamps of entry into or exit from the United States. Polanco did not initially inform the DHS agents of the existence of his green card. Furthermore, a search in DHS databases for Polanco's immigration file based on the information provided on his Dominican passport resulted in "no record" of his residency status being found.[5] Pursuant to 8 U.S.C. § 1304(e), a legal permanent resident must, at all times, carry a "certificate of alien registration or alien registration receipt card." 8 U.S.C. § 1304(e).[6] As a result, DHS agents had

---

[5] Though there seem to be discrepancies in Polanco's immigration file regarding his date of birth which might have affected DHS agents' initial search for his records, such discrepancies do not affect our determination.

[6] Other Circuits have had occasion to review factual circumstances similar to the case at hand. The Ninth Circuit has held that "[a]n individual's admission that she is an alien, coupled with her failure

11

probable cause to arrest Polanco. 8 U.S.C. § 1357(a)(2) (providing immigration officers with the power to make warrantless civil deportation arrests).

Because Defendant DHS agents had probable cause to arrest Polanco, their employer, the United States, would not be liable for false arrest or false imprisonment for the privileged behavior.

E. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

As Plaintiff has failed to establish any of his federal claims, the Court declines to exercise jurisdiction over Plaintiff's state law claims.

### III. CONCLUSION

Based upon the parties' submissions, this Court finds that the Court has jurisdiction over this claim. Defendants' Motion pursuant to 12(b)(1) is DENIED. The Court finds that Defendants were privileged to detain Plaintiff. As a result, Defendants' Motion Pursuant to 56(c) is hereby GRANTED. The Clerk of the Court is directed to close the case. SO ORDERED.

Dated: February 27, 2014 _____/s/_____
      Brooklyn, New York       Sterling Johnson, Jr., U.S.D.J.

---

to produce her green card, provides probable cause for an arrest." Martinez v. Nygaard, 831 F.2d 822 (9th Cir. 1987).